**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN 224018)
  bhur@willkie.com
SIMONA A. AGNOLUCCI (SBN 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN 281668)
  esantacana@willkie.com
DAVID D. DOAK (SBN 301319)
  ddoak@willkie.com
ISABELLA MCKINLEY CORBO (SBN 346226)
  icorbo@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA  94104
Telephone: (415) 858-7400

Attorneys for Defendant
**GOOGLE LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER NEWTON, CHRISTA VITAL, SCOTT SCHUTZA on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation, META PLATFORMS INC., a Delaware Corporation, GOOGLE LLC, a Delaware Limited Liability Company, and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. 3:24-cv-03625-EMC<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF GOOGLE'S MOTION TO SEVER CLAIMS**<br><br><u>**CLASS ACTION**</u><br><br>Removed from Alameda  Superior Court Case No. 24CV073453<br><br>Trial Date: Not set<br>Current Action Filed: April 29, 2024<br>Removal Filed:       June 14, 2024 |
| JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, and JANE DOE V, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, | **RELATED ACTION**<br>Case No. 3:23-cv-02865-EMC<br><br>SAC filed:       May 9, 2024<br>Trial date:      October 27, 2025 |

and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,

        Defendants.

ALEXIS SUTTER, on behalf of herself and all others similarly situated,

        Plaintiffs,

    vs.

KAISER FOUNDATION HEALTH PLAN, INC.,

        Defendant.

**RELATED ACTION**
Case No.: 3:24-cv-03352-EMC

Trial Date: Not set
Current Action Filed:  June 4, 2024

## I.   INTRODUCTION

Plaintiffs' Opposition (ECF No. 29) all but ignores that substantially the same claims against Google are already being litigated on behalf of an overlapping proposed class in the earlier-filed case of *Doe v. Google LLC*, No. 3:23-cv-02431-VC (Chhabria, J.) ("*Doe v. Google*"), which has been vigorously litigated in this District for over a year. Kaiser's website is one of twelve *specifically* at issue in *Doe v. Google*. Plaintiffs' opposition asks the Court to consider the factors relevant to severance in a contextual vacuum, without regard to *Doe v. Google*, but that is not the test. The factors uniformly favor severance. And the logic of severance is inescapable, because the issues presented here and in *Doe v. Google* are nearly identical, and severance is a necessary first step toward relating the claims.

Plaintiffs also ignore the inefficiencies and inconsistencies that will result should severance be denied, citing no case in which the claims against the party seeking severance were *already being litigated by an overlapping proposed class*. Nor do Plaintiffs grapple with the intrinsic differences between their claims against Google and Kaiser—much less the differences between their claims against Google and Meta, which concern distinct technologies, companies, and alleged conduct. Given that Plaintiffs' claims against Google arise from different transactions and occurrences, will present different issues of fact and law, and will require proof by different evidence vis-a-vis Plaintiffs' claims against the other defendants, severance is appropriate here. Further, severance of the claims against Google will facilitate their relation to *Doe v. Google*, which will promote judicial economy, reduce the risk of inconsistent rulings (and avoid litigation on claim and issue preclusion), lower the cost of litigation for all parties, and remove unnecessary barriers to settlement.

## II.   ARGUMENT

### A.   Plaintiffs' Claims Against Google Arise from Different Transactions and Occurrences Than the Claims Against Kaiser and Meta

Because Plaintiffs' claims against Google relate to alleged transactions and occurrences that are "discrete and separate" from those underlying the claims against Kaiser and Meta, the

claims against Google should be severed. ECF No. 24 at 4-5.

Plaintiffs argue that there is "overlap in the 'transactions and occurrences' underlying Plaintiffs' claims against all three Defendants." ECF No. 29 at 5:26-27. But this generality elides important differences between Plaintiffs' allegations relating to Google and Kaiser—and is categorically false as to the claims against Google and Meta. Taking the claims against Google and Meta first: As is plain from the face of the complaint, Plaintiffs' claims against Google and Meta concern these companies' respective proprietary analytics technologies, which are wholly separate. The complaint indicates that Google Analytics and Meta Pixel perform different functions with different data, are offered by different companies, and are governed by different policies and procedures.

Nor do Plaintiffs' claims against Google arise out of the same "transactions and occurrences" as the claims against Kaiser. In opposing Google's motion to sever, Plaintiffs seem to argue that because they received from Kaiser a Notice of Data Breach that referenced both Google and Meta, the transactions and occurrences relevant to Plaintiffs' claims against all the Defendants are the same. ECF No. 29 at 1. But Plaintiffs have not alleged that the Notice of Data Breach reflects overlap between Google's conduct and Kaiser's, much less between Google's and Meta's. And Plaintiffs' allegations make clear that the purported actions of the "third party advertisers"—that is, Google and Meta—are distinct from the purported actions of Kaiser: whereas Kaiser allegedly "'created, maintained, preserved, and stored' Plaintiffs' and the Class members' personal and confidential medical information" (ECF No. 29 at 5 (citing ECF 1-4 at ¶¶ 4-6)), Google allegedly "intercepted" it (*id*. (citing ECF 1-4 at ¶ 6)). These alleged transactions and occurrences are different. The creation and preservation of Plaintiffs' personal and confidential medical information are distinct events from the interception of this information, and the data breach notice is different still.

Further, the cases Plaintiffs cite are either inapposite or support Google's position. In *Coughlin v. Rogers*, the Ninth Circuit upheld a grant of severance as to 49 immigration petitions because "each petitioner present[ed] a different factual situation." 130 F.3d 1348, 1351 (9th Cir.

1997). So too here: the claims against Google, Meta, and Kaiser will rise and fall on different facts. As in *Coughlin*, Plaintiffs here do not—and cannot, given the separateness of Google's and Meta's technologies, and the different factual allegations directed at Google and Kaiser—credibly assert that their claims against all three defendants "arise out of a systematic pattern of events and, therefore, arise from the same transaction or occurrence." *See id.* at 1350. In *Jacques v. Hyatt Corp.*, a slip-and-fall case, the Court found factual similarity in the re-injury of the plaintiff's knee in "exactly the same way" just two months apart. No. C 11-05364 WHA, 2012 WL 3010969, at *3 (N.D. Cal. July 23, 2012). Here, Plaintiffs do not allege that they suffered the same injury twice. Rather, they allege, in effect, that they suffered different injuries at different times. Further, *Jacques* is distinguishable for the additional reason that it did not concern a situation where, like here, virtually identical claims were already being litigated on behalf of the same class of plaintiffs in the same District.

The claims against Google, Meta, and Kaiser involve different alleged acts by different actors. The only nexus among all three defendants is that they all allegedly interacted in some way with personal and confidential medical information associated with Plaintiffs. *See Rosewolf v. Merck & Co.*, No. 22-CV-02072-JSW, 2022 WL 3214439, at *2 (N.D. Cal. Aug. 9, 2022) (in weighing this factor, "a court must assess each case's facts individually"). The specific information at issue, and what is alleged to have been done with that information, and how, is different as to all three defendants. This factor therefore weighs in favor of severance.

**B.     Plaintiffs' Claims Against Google Present Distinct Questions of Law and Fact**

Because the alleged actions of Google, Meta, and Kaiser are meaningfully different, the facts required to prove Plaintiffs' claims against them will be different as well. Thus, it does not matter if Defendants face similar or even identical causes of action. *See SEC v. Leslie*, No. C 07-3444, 2010 WL 2991038 at *5 (N.D. Cal. July 29, 2010) (when "the factual predicates underlying the violations are different," the court is not "typically [] concerned" about this "type of legal overlap," because it "will not be required to resolve significant questions of law in isolation from those facts").

Plaintiffs' response to this point is that the "significant common legal questions" facing Google, Meta, and Kaiser are "whether the type of information Defendants obtained and sold to third party advertisers constitutes confidential medical information as defined by Civil Code § 56.05(j) [the CA Confidentiality of Medical Information Act ("CMIA")]." ECF No. 29 at 6. This is incorrect. Because the technologies at issue in the claims against Google and Meta are different, the type of information allegedly "obtained," and the manner in which this occurred, will be different as well. Plaintiffs certainly do not allege otherwise. Therefore, there are no common issues of fact, and no common issues of law that, in this context, weigh against severance.

The claims against Google and Kaiser are likewise distinguishable. The claims against Kaiser stem from its decision to incorporate Google's analytics technology on its website. (*See, e.g.,* ECF No. 1-4 at 10,  ¶¶ 28-30.) Meanwhile, the claims against Google arise from the functionalities of Google's technology and Google's own alleged actions. *See, e.g., Id*. at 24-25, ¶¶ 105-115. To establish their claims against Kaiser, Plaintiffs will need to discover information regarding the decision to incorporate Google's analytics code on Kaiser's websites and the mechanisms undertaken to "'create[], maintain[], preserve[], and store[]' Plaintiffs' and the Class members' personal and confidential medical information. (*See* ECF No. 1-4 at ¶¶ 4-6.) The inquiry as to Google will be different, focusing instead on the functionalities of Google's technology and the circumstances surrounding the alleged "interception" of Plaintiffs' confidential medical information. *See* ECF No. 1-4 at 3, ¶ 9.

Plaintiffs further argue that common legal questions include whether the alleged actions violated the "FTC Act, HIPAA, CMIA, and/or other law." ECF No. 29 at 6. But Plaintiffs assert no claims against Google under the FTC Act or HIPAA. Plaintiffs allege that "Kaiser's violation of the FTCA constitutes negligence per se," but do not allege the same of Google. (*See* ECF No. 1-4 at 40, ¶ 190.) Further, Google's analytics technology is not covered under HIPAA.  For all of these reasons, whether common legal questions might exist under these statutes is irrelevant.

Finally, Plaintiffs assert without explanation that "[e]ach of the defendants [] will surely be pointing to the other as the primary cause of the ultimate injuries[,]" which further creates

common questions of fact." ECF No. 29 at 6 (citing *Jacques*, 2012 WL 3010969, at *4). This is pure speculation and should be disregarded.

### C.    Plaintiffs' Claims Against Google Will Require Different Evidence

As to the claims against Google and Meta, Plaintiffs offer no explanation of how the claims against these defendants will require common evidence. It bears repeating that Plaintiffs' claims against Google and Meta concern distinct technologies. Because of this, these claims will be proved by different documents, different testimony by different fact witnesses, and likely different experts. *See Cellectricon AB v. Fluxion Biosciences, Inc.*, No. C-09-3150 RMW, 2011 WL 1557987, at *3 (N.D. Cal. Apr. 25, 2011) (granting motion to sever because claims concerned "different technologies" and thus required different evidence).

As to the evidence relevant to Plaintiffs' claims against Google and Kaiser, any Google-related information that is relevant to Plaintiffs' claims against Kaiser should be available directly from Kaiser. To the extent that Kaiser needs to work with Google to obtain information responsive to discovery requests directed at Kaiser, it can seek to do so. Plaintiffs also can seek third-party discovery from Google.

Additionally, the positions taken by Plaintiffs regarding consolidation and severance are contradictory and irreconcilable. Plaintiffs stated in their portion of the parties' Joint Statement filed on July 30, 2024 that they "do not object to consolidation" of the instant case with the related cases *Doe v. Kaiser*, No. 3:23-cv-02865-EMC (Chen, E.M.) ("*Doe v. Kaiser*"), and *Sutter v. Kaiser*, No. 3:24-cv-03352-EMC (Chen, E.M.) ("*Sutter*"), and would propose to stay the claims "as they relate to Kaiser, and Kaiser only" in the instant case, "pending *Doe* [*v. Kaiser*]" while continuing to litigate against Google and Meta. *See* Joint Status Conf. Statement, *Doe v. Kaiser*, No. 3:23-cv-02865-EMC, ECF No. 218 at 14. Should Plaintiffs' request be granted, it will eliminate the supposed risk of duplicative discovery that is the crux of Plaintiffs' opposition to severance here, since the claims against Google and Meta will not require common evidence.  Plaintiffs also fail to explain—even as they acknowledge that their claims against Kaiser across the three already-related cases are sufficiently similar as to merit consolidation—why their claims against Google

should not be severed and related to the virtually identical claims that have been pending for over a year in *Doe v. Google*.

This raises another point: Plaintiffs ignore that their claims against Google relating to Kaiser's use of Google's analytics technology are already being litigated in *Doe v. Google* on behalf of an overlapping class. (The proposed class in *Doe v. Google* subsumes the proposed class here. (*See* ECF No. 24 at 7-8.)) Any discovery sought in *Newton* will be redundant of discovery in *Doe v. Google*. Should severance be granted, however, any portion of overlapping evidence that may be required for Plaintiffs' claims against Kaiser or Meta will be less burdensome for Google to re-produce in *Newton* than it would be for Google to conduct a full document collection, review, and production process in both *Newton* and *Doe v. Google*.[1] And any Google witnesses who may be relevant to Plaintiffs' claims against Kaiser or Meta can still be called in *Newton*. But should the Court decline to sever the claims against Google, nearly every single witness relevant to the claims against Google will likely have to appear twice.

The two cases Plaintiffs cite for their argument on this factor do not change the analysis. Neither addresses a situation where, as here, the relevant witnesses will already be called to testify and the relevant documentary evidence will already be collected in an overlapping action. *See Zaldana v. KB Home*, No. C-08-3399 MMC, 2010 WL 4313777, at *2 (N.D. Cal. Oct. 26, 2010);

---

[1] If the claims against Google in *Newton* were not severed, then every piece of information relevant to Plaintiffs' claims against Google would need to be sought and gathered in discovery in both *Newton* and *Doe v. Google*. However, if the claims against Google were severed and Plaintiffs' claims against Google were related to *Doe v. Google*, with the *Newton* claims against Kaiser and Meta proceeding separately, then Plaintiffs in that separate case would only need to seek pieces of discovery from Google that would also be necessary for the separate *Newton* claims against Kaiser and Meta. For example, documents and testimony relating *only* to the creation of Google's analytics code are *only* relevant to Plaintiffs' claims against Google. If severance is denied, then this discovery will need to be sought in both *Newton* and *Doe v. Google*. If severance is granted, then this discovery need be produced only once. On the other hand, discovery regarding any relationship between Kaiser and Google, such as discussions surrounding Kaiser's decision to embed Google's code on its websites, may be relevant to both the claims against Google and the claims against Kaiser. If the claims are severed, only this subset of information will need to be produced twice—once in the severed action, and once in the instant case.

GOOGLE LLC'S REPLY IN SUPPORT OF GOOGLE'S MOTION TO SEVER CLAIMS
CASE NO. 3:24-cv-03625-EMC

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC (WVG), 2013 WL 2631333, at \*6 (S.D. Cal. June 11, 2013).

**D.      Severance Will Promote Judicial Economy and Simplify Any Future Settlement Discussions**

Plaintiffs argue that their "claims against both Google and Kaiser arise specifically out of Google's access to confidential and private data through Kaiser's website and apps whereas *Doe v. Google* involves a proposed class of persons whose health information was obtained by Google from any health care provider." (ECF No. 29 at 8.) Yet Plaintiffs ignore that "any health care provider" necessarily includes Kaiser. *Id*. Moreover, as Google stated in its Motion and *supra* at 1, Kaiser is already one of the websites that is *specifically* at issue in *Doe v. Google. See* ECF No. 24 at 2. The instant case and *Doe v. Google* already share a "significant number of common witnesses and documents," which weighs in favor of a course that will allow these claims to be related. *See Leslie*, 2010 WL 2991038, at \*4, 6.

Again, *Doe v. Google* involves substantially the same claims asserted on behalf of the same proposed class as in the instant case. That case has been vigorously litigated for over a year, during which time the presiding judge has become well-versed in the relevant facts and law. The claims against Google in *Newton* can be most efficiently administered by severance and relation to *Doe v. Google*. Without relation, Google would be forced to litigate the same claims before two different judges at the risk of inconsistent results, and with the certainty of much greater expense. Plaintiffs indicate in a section heading of their Opposition that severance will not facilitate settlement, but they offer no reasons why. Severance can facilitate settlement because, to the extent that the parties might undertake any future settlement discussions, these will be considerably more challenging if they must take account of multiple proceedings at different stages before different judges. *See* ECF No. 24 at 8.

None of the cases cited by Plaintiffs suggest that severance would lead to inefficiency or impede settlement here. In *Grano v. Sodexo Mgmt., Inc.*, the Southern District of California considered whether to sever cross-claims for indemnification, asserted by defendants against each

GOOGLE LLC'S REPLY IN SUPPORT OF GOOGLE'S MOTION TO SEVER CLAIMS
CASE NO. 3:24-cv-03625-EMC

other, from the primary claims asserted by the plaintiffs. No. 3:18-CV-01818-GPC-BLM, 2020 WL 2111898, at *8 (S.D. Cal. May 4, 2020). The court denied severance primarily because "[t]he cross claims regarding failure to indemnify are directly and logically related to Plaintiffs' claims since any determination of liability on the part of Defendants will implicate apportionment of liability." *Id.* at *8. The court further expressed concern "that if the cross-claims are severed, there will be a danger of inconsistent findings where either Defendant could potentially be found responsible for Plaintiffs' claims in the first trial but then denied indemnification or contribution in the second trial if the other party is found to be without fault." *Id.* Of course, there are no cross-claims here, and severance would mitigate the risk of inconsistent results by facilitating the claims' relation to *Doe v. Google*.

**E.     Severance Will Prevent Prejudice to Google and Cause No Prejudice to Plaintiffs**

As explained *supra* at 6, denying severance would force Google to litigate claims arising out of the same events in two separate actions. Plaintiffs assert that such a denial would force "*Plaintiffs*" to litigate "in two separate actions" (ECF No. 29 at 8), but they ignore that an overlapping class in the earlier-filed *Doe v. Google* is already litigating substantially the same claims, such that it is Plaintiffs' claims here that will be redundant and unnecessary if they are allowed to proceed separately.

Although Plaintiffs treat the "danger of prejudice resulting from jury confusion" as the whole of the prejudice factor (*see* ECF No. 29 at 8)—and Google does not dispute that jury confusion is part of it— they neglect to consider other forms of prejudice such as the expense of litigating the same claims in multiple forums, and delays in the resolution of claims. *See, e.g., Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2017 WL 2081236, at *10 (N.D. Cal. May 15, 2017) (considering the risk of "lengthy delays," among other forms of prejudice); *Colors of India v. Nielsen*, No. CV 18-4070-MWF (ASx), 2018 WL 6430118, at *5 (C.D. Cal. Oct. 19, 2018) (weighing the risk of "lengthy delays associated with duplicative, unnecessary discovery requests"). Google will face precisely such prejudice if forced to litigate the same claims relating

to the use of its technology on Kaiser's website in two separate actions. And there will be a corresponding tax on judicial resources, too.

Plaintiffs' conflation of Google's and Meta's technology on nearly every page of their opposition brief underscores the risk of confusion if the claims against these defendants are tried to a single jury, as Plaintiffs are already attempting to conflate Google's technology with Meta's, and Google's actions with Kaiser's. *See, e.g.,* ECF No 29 at 1 ("these claims all result from a single series of transactions and events"); i*d*. at 2 ("Kaiser incorporated Meta and Google's technology into Kaiser's platforms, allowing Meta and Google to intercept Plaintiffs' data"); *id*. at 2-3 ("Google and Meta knew that Kaiser's incorporation of their software into the Kaiser website and apps would result in their interception of identifiable health information and other sensitive data."); *id*. at 5 ("there is overlap in the 'transactions and occurrences' underlying Plaintiffs' claims against all three Defendants."); *id*. at 6 ("Since Plaintiffs claim that both Google and Meta accessed their private information via Kaiser's platforms, Plaintiffs' claims against Google also raise factual questions that will be common to their claims against Meta."; "There will be substantial overlap in the evidence relevant to proving Plaintiffs' claims against all three Defendants."); *id*. at 7 ("Plaintiffs' claims against Google and the other Defendants present common questions that will be proved by the same evidence"). No jury instruction could adequately guard against the risk of prejudice in the face of such deliberate efforts to muddy the waters. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296-1297 (9th Cir. 2000) (holding "danger of jury confusion" supports severance of otherwise properly joined claims).

## III.   CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant Google's motion to sever the claims against Google in this action.

Dated:  August 5, 2024                    WILLKIE FARR & GALLAGHER LLP
                                          Benedict Y. Hur
                                          Simona A. Agnolucci
                                          Eduardo E. Santacana
                                          David D. Doak
                                          Isabella McKinley Corbo

By:   */s/ Simona A. Agnolucci*
        SIMONA A. AGNOLUCCI

        Attorneys for Defendant
        GOOGLE LLC

GOOGLE LLC'S REPLY IN SUPPORT OF GOOGLE'S MOTION TO SEVER CLAIMS
CASE NO. 3:24-cv-03625-EMC