**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
100 Pine St., Ste 1250,
San Francisco, CA 94111
Tel: (415) 534-1911
Fax: (888) 422-5191
Attorneys for Plaintiff and the Proposed Class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

CHRISTOPHER NEWTON, CHRISTA VITAL, SCOTT SCHUTZA on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation, META PLATFORMS INC., a Delaware Corporation, GOOGLE LLC, a Delaware Limited Liability Company, and DOES 1 through 100, Inclusive,

Defendants.

Case No. 3:24-cv-03625-EMC

**PLAINTIFFS' OPPOSITION TO MOTION TO SEVER PLAINTIFFS' CLAIMS AGAINST META PLATFORMS, INC.**

Date: October 30, 2024
Time: 9:30 a.m.
Ctrm: 5 – 17th Floor

**CLASS ACTION**
District Judge: Hon. Edward M. Chen
Magistrate Judge: Hon. Peter H. Kang

Trial Date: Not set
Current Action Filed: April 29, 2024
Removal Filed: June 14, 2024

*[CAPTION CONTINUED ON NEXT PAGE]*

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, and JANE DOE V, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON<br><br>Defendants. | **RELATED ACTION**<br>Case No.: 3:23-02865-EMC<br><br>SAC Filed: May 9, 2024<br>Trial Date: October 27, 2025 |
| ALEXIS SUTTER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>Defendant. | **RELATED ACTION**<br>Case No.: 3:24-03352-EMC<br><br>Trial Date: Not set<br>Current Action Filed: June 4, 2024 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................... iv

Cases ..................... iv

Statutes ..................... v

I. INTRODUCTION ..................... 1

II.PROCEDURAL BACKGROUND ..................... 2

III.ARGUMENT ..................... 4

A. Legal Standard ..................... 4

B. This Case Is Similar to Recent Northern District Cases Wherein Motions to Sever Defendant Meta Have Been Denied. ..................... 5

C. The Claims Against Meta Arise from the Same Transaction or Occurrence as Plaintiffs' Claims Against the Other Defendants in This Case ..................... 8

D. Plaintiffs and Plaintiffs' Claims Against Meta in This Case Are Different from Those in the Meta Consolidated Healthcare Action. ..................... 10

E. Severance Would Neither Promote Judicial Economy Nor Avoid Prejudice to Meta ..................... 11

F. The Claims Against Meta Present Questions of Law and Fact Common to Plaintiffs' Other Claims and Will be Proven by Common Evidence. ..................... 15

IV.CONCLUSION ..................... 17

## TABLE OF AUTHORITIES

### Cases

*Anticancer, Inc. v. Pfizer Inc.,* No. 11CV107 JLS RBB, 2012 WL 1019796, at *1 (S.D. Cal. Mar. 26, 2012)....................................................................................................... 4, 5

*Bravado Int'l Grp. Merch. Servs. v. Cha,* No. CV 09-9066 PSG (CWX), 2010 WL 2650432, at *4 (C.D. Cal. June 30, 2010)....................................................................................................... 8

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 2013 WL 2631333, at *6 (S.D. Cal. June 11, 2013)....................................................................................................... 14, 16

*Burden v. Serafin*, No. 22-CV-03479-DMR, 2022 WL 20113300, at *3 (N.D. Cal. Nov. 14, 2022) ....................................................................................................... 5

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296-1297 (9th Cir. 2000) ....................................... 14

*Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997)............................................................ 4, 8

*Doe v. GoodRx Holdings, Inc.,* No. 23-cv-00501-AMO.............................................................. 5, 6

*Doe v. Hey Favor, Inc., No. 23-cv-00059-WHO* .................................................................... passim

*E.C. v. Lincoln Mil. Prop. Mgmt. LP*, No. 21-CV-2070 JLS (BLM), 2022 WL 4241734, at *7 (S.D. Cal. Sept. 13, 2022) ....................................................................................................... 12

*Frasco v. Flo Health* case (Case No. 3:21-cv-00757-JD (N.D. Cal.) ............................................ 12

*Grano v. Sodexo Mgmt., Inc.,* No. 318CV01818GPCBLM, 2020 WL 2111898, at *8 (S.D. Cal. May 4, 2020) ....................................................................................................... 11

*Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2017 WL 2081236, at *4 (N.D. Cal. May 15, 2017)....................................................................................................... 5

*Horowitz v. Chen*, No. SACV1700432CJCDFMX, 2020 WL 4805466, at *2 (C.D. Cal. May 20, 2020)....................................................................................................... 5, 9

*Jacques v. Hyatt Corp.*, No. C 11-05364 WHA, 2012 WL 3010969, at *3 (N.D. Cal. July 23, 2012)....................................................................................................... 8, 16

*Jetpack Enterprises, LLC v. Jetlev, LLC*, No. SACV1502113CJCJCGX, 2016 WL 11020227, at *3 (C.D. Cal. Aug. 31, 2016) ....................................................................................................... 5

*Martin v. Pierce Cnty.*, 34 F.4th 1125, 1128 (9th Cir. 2022)....................................................... 10

*Opperman v. Path, Inc.*, 2013 WL 1899688, at *4, *6 (N.D. Cal. May 6, 2013)............................ 9

*Rosewolf v. Merck & Co.*, No. 22-CV-02072-JSW, 2022 WL 3214439, at *2 (N.D. Cal. Aug. 9, 2022)....................................................................................................... 15

*S.E.C. v. Leslie,* No. C 07-3444, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010)............... 4, 11
*Schertzer v. Bank of America, N.A.* (S.D. Cal., Apr. 13, 2021, No. 19CV264 JM(MSB)) 2021 WL 1383164, at *3 (S.D. Cal. Apr. 13, 2021) ........................................................................ 12
*Spencer, White & Prentis, Inc. v. Pfizer, Inc.,* 498 F.2d 358, 362 (2d Cir.1974) ............................. 4
*Walker v. Bryson*, No. 1:11-CV-01195-AWI, 2012 WL 5186658, at *4 (E.D. Cal. Oct. 16, 2012) ........................................................................................................................ 15
*Zaldana v. KB Home*, No. C-08-3399 MMC, 2010 WL 4313777, at *2 (N.D. Cal. Oct. 26, 2010) ........................................................................................................................ 16

## Statutes

Fed. R. Civ. P. 21 ........................................................................................................................ 4

# I. INTRODUCTION

This action is against not only Meta Platforms, Inc. ("Meta") but also two other corporate defendants as well as Doe defendants. On April 12, 2024, Defendants Kaiser Foundation Health Plan, Inc. ("Kaiser") reported to the United States Department of Health and Human Services that 13.4 million of its members were affected by a massive data breach. (*See* ECF 1-4 (FAC), ¶31.) The cause of the breach, according to an April 25 report from TechCruch, was the use of online technologies on its websites and mobile applications that 'may have transmitted personal information to third-party vendors.'"[1] (ECF 1-4 (FAC), ¶27). The approximately May 13, 2024, notification provided to those Kaiser consumers – all members of the putative class – indicated that Kaiser regularly shared information from its website and mobile applications to Google and Meta. (ECF 1-4 (FAC), ¶33-38).

Plaintiffs Christopher Newton, Christa Vital, and Scott Schutza (collectively, "Plaintiffs"), brought the current action naming Kaiser, Google LLC ("Google"), Meta, and Doe defendants, for claims related to the Notice of Data Breach sent by Kaiser to Plaintiffs and the putative class members in May 2024, and related to the public filing to the United States Department of Health and Human Services on April 12, 2024. Based upon recent orders issued in similar cases within the Northern District of California, and because these claims all result from a single series of transactions and events, Plaintiffs believe they should be part of one case, the present action.

Meta seeks via motion filed on August 23, 2024, to break the claims against Meta in this suit into a separate action. The motion itself does not request the action directly, but alludes to the fact that Meta intends for the actions of Plaintiffs in this case against Meta to be related to and consolidated with the consolidated action *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-03580-WHO (N.D. Cal. June 17, 2022) (the "Consolidated Healthcare Action") currently

[1] https://techcrunch.com/2024/04/25/kaiser-permanente-health-plan-millions-data-breach/

pending before the Hon. Judge William H. Orrick. Meta argues three points in support of its motion: judicial economy, avoiding prejudice/risk of inconsistent results, and distinct issues/witnesses. Plaintiffs would show that this case is procedurally similar to cases in which motions to sever Meta have been recently denied; and that, moreover, the issues of judicial economy, prejudice/inconsistent results, and common issues/witnesses, would argue against granting Meta's motion in this case.

For these reasons, and the reasons further elaborated below, Plaintiffs respectfully request the Court deny Meta's motion to sever.

## II. PROCEDURAL BACKGROUND

The procedural background here is the same as recited in Plaintiffs' recently-filed opposition to Google's motion to sever.

Plaintiffs Christopher Newton, Christa Vital, and Scott Schutza (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, sued Defendants Kaiser Foundation Health Plan, Inc. ("Kaiser"), Meta Platforms, Inc. ("Meta"), and Google LLC ("Google") (collectively, "Defendants") on claims arising out of Defendants' wrongful collection, use, and release of Plaintiffs' sensitive and confidential medical information. (*See* ECF 1-4 (FAC).)

Plaintiffs are individuals who used Kaiser's websites and web applications. (ECF 1-4 (FAC), ¶¶ 12-14.) Unbeknownst to Plaintiffs, Kaiser incorporated Meta and Google's technology into Kaiser's platforms, allowing Meta and Google to intercept Plaintiffs' data and use it for their own benefit without Plaintiffs' authorization. (ECF 1-4 (FAC), ¶¶ 6, 22, 23, 25, 26, 32.) Defendants Google and Meta knew that Kaiser's incorporation of their software into the Kaiser website and apps would result in their interception of identifiable health information and other sensitive data. (ECF 1-4 (FAC), ¶¶ 17- 23.)

In April 2024, Plaintiffs learned through an article on Techcrunch and other media reporting that their personal medical information and personal identifying information were disclosed to "third-party advertisers," including Google and Meta. (ECF 1-4 (FAC), ¶ 27.)

In May 2024, Kaiser notified approximately 13.4 million affected current and former members of a data breach potentially involving them. (*See* ECF 1-4 (FAC), ¶¶ 31, 33.) According to Kaiser, the information included IP addresses, names, information that could indicate a member or patient was signed into a Kaiser account or service, information showing how members or patients interacted with and navigated through the website and mobile applications, and search terms used in the health encyclopedia. (ECF 1-4 (FAC) at ¶ 34.)

Kaiser's notice to potentially-affected current and former members stated that "[o]n October 25, 2023," Kaiser had "determined that certain online technologies…installed on our websites and mobile applications may have transmitted personal information to our third-party vendors…when members and patients accessed our websites or mobile applications." (ECF 1-4 (FAC), ¶ 33.) Kaiser therefore knew by October 25, 2023, at the latest, that third-party vendors were using technologies on Kaiser's platform to obtain personal information from those who logged into Kaiser's platform, yet took no action to warn potentially affected persons until almost seven months later. (ECF 1-4 (FAC), ¶ 37.) During this time, unauthorized third parties had free reign to surveil and defraud their unsuspecting victims. (*Id.*) And in fact, during this time, Plaintiffs began noticing advertisements on social media sites, such as Facebook and Instagram, for illnesses that they previously had only disclosed to their physicians. (ECF 1-4 (FAC), ¶ 38.) These advertisements clearly indicate that not only was medical information released to third parties, but the information was viewed, and then acted upon. (*Id.*)

Plaintiffs filed their action on behalf of similarly-situated persons nationwide who used Kaiser's platform and whose communications and/or data were intercepted by Defendants, and who received a Notice of Data Breach in May of 2024. (ECF 1-4 (FAC), ¶ 3.)

Plaintiffs' operative complaint asserts causes of action for 1) violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code, §§ 56, *et seq*.; 2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.; 3) Negligence; 4) Negligence Per Se; 5) Common Law Invasion of Privacy – Intrusion Upon Seclusion; 6) California's Invasion of Privacy Act, Cal. Penal Code § 631; and 7) California's Invasion of Privacy Act, Cal. Penal Code § 631. (ECF 1-4 (FAC), *passim*).

Meta seeks to sever Plaintiffs' claims against it. (ECF 36, *passim*).

## III. ARGUMENT

### A. Legal Standard

The touchstone of Rule 21 jurisprudence lies in the discretion of the district court to look at the case before it and determine whether severance is appropriate at any given moment. Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Whether to grant a motion to sever lies within the sound discretion of the district court. *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). However, a court may not "attempt to separate an essentially unitary problem[.]" *Anticancer, Inc. v. Pfizer Inc.,* No. 11CV107 JLS RBB, 2012 WL 1019796, at *1 (S.D. Cal. Mar. 26, 2012) (quoting *Spencer, White & Prentis, Inc. v. Pfizer, Inc.,* 498 F.2d 358, 362 (2d Cir.1974)).

"Application of Rule 21 involves consideration of convenience and fairness." *S.E.C. v. Leslie,* No. C 07-3444, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010) (citing *Spencer, White & Prentis, Inc. v. Pfizer, Inc.,* 498 F.2d 358, 362 (2d Cir.1974)). In deciding whether to sever a claim under Rule 21, a court considers: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether

settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2017 WL 2081236, at *4 (N.D. Cal. May 15, 2017). "These factors 'do not operate as a mechanical test, but rather, serve as a guide to courts in exercising discretion over severance motions.'" *Burden v. Serafin*, No. 22-CV-03479-DMR, 2022 WL 20113300, at *3 (N.D. Cal. Nov. 14, 2022) (quoting *Jetpack Enterprises, LLC v. Jetlev, LLC*, No. SACV1502113CJCJCGX, 2016 WL 11020227, at *3 (C.D. Cal. Aug. 31, 2016)).

Meta has the burden of proof and must show the *necessity* of severing claims against it. "The party seeking severance bears the burden of proving that separation of the claims is *necessary*." *Horowitz v. Chen*, No. SACV1700432CJCDFMX, 2020 WL 4805466, at *2 (C.D. Cal. May 20, 2020) (citing *Anticancer*, 2012 WL 109796, at *1) (emphasis added). As has been the case in recent Northern District cases, Meta fails to carry its burden here.

### B. This Case Is Similar to Recent Northern District Cases Wherein Motions to Sever Defendant Meta Have Been Denied.

Meta made this same type of motion three times recently in two California Northern District cases, and each of those three requests for severance was rejected. (*See Doe v. GoodRx Holdings, Inc.,* No. 23-cv-00501-AMO, motion to sever denied July 31, 2024; *Doe v. Hey Favor, Inc., No. 23-cv-00059-WHO,* first motion to sever denied May 24, 2023, and second motion to sever denied January 17, 2024). As discussed at length by Hon. Judge Araceli Martinez-Olguin in *GoodRx*:

Meta seeks to sever the claims asserted against it in this action in order to relate those claims to the *In re Meta Pixel Healthcare Litigation*, No. 3:22-cv-03580-WHO (N.D. Cal. filed June 17, 2022), pending in this district. However, in denying two motions to sever by Meta in a different case - *Doe v. Hey Favor* - the presiding judge in *Meta Pixel* explained that the action

"concerns only the conduct of Meta and its capture and use of personal healthcare information primarily through the use of Meta's Pixel and primarily through patient portals and related webpages on websites." *Doe v. Hey Favor, Inc.*, No. 23-cv-00059-WHO, Order Denying Motion to Sever at 1, ECF No. 75; *see also* June 15, 2023 Hr'g Tr. at 6:6-17, ECF 78 (explaining that the court "ha[s] been trying to keep the hospital litigation cases separate from everything else[,]" and that it seemed "the telemed cases are different to some degree even though they overlap"). The court distinguished the *Hey Favor* litigation as a "case [that] concerns the conduct of five different defendants and primarily concerns those five defendants' capture and use of personal healthcare information through mobile applications or apps." Order Denying Motion to Sever at 1. It maintained that distinction when denying Meta's renewed motion to sever. *See* Jan. 17, 2024 Minute Entry, ECF 117; Jan. 17, 2024 Hr'g Tr. at 24:25-26:3, ECF No. 119 (stating that the court would "forge ahead in the manner in which [it] laid it out").

Here, that distinction counsels against severance of the claims Meta seeks to relate to the *Meta Pixel* litigation. While Meta is the sole defendant in *Meta Pixel*, Plaintiffs in this case name three other defendants in connection with the alleged wrongful interception of internet users' data while they visited a specific website - the GoodRx website - and a specific mobile application -the GoodRx app. *See, e.g.*, ECF 102 ¶¶ 60-90. Tacking on these additional claims to the already complex *Meta Pixel* litigation that has been pending since June 17, 2022,[] where significant discovery activity has occurred, and where Meta has answered the operative complaint, would not promote efficiency. (*Doe v. GoodRx Holdings, Inc.,* No. 3:23-cv-00501-AMO, ECF 207 pp.1-2) (emphasis added).

The instant case has more in common with the *GoodRx* and *Hey Favor* cases than with the single-issue, single-defendant Meta consolidated cases. Here, as in *GoodRx* and *Hey Favor*, there are multiple involved defendants. There are also both website and apps involved in the breach, per

the Kaiser notice, as was the case in *GoodRx* and *Hey Favor*. Also as in those cases, the breached information in this case is broader than the more-narrow hospital cases. The Kaiser Foundation Health Plan uses the Kaiser Permanente app, which is integrated into Kaiser's medical groups and hospital system, to provide information on much more than simply the Kaiser health insurance plans. The app allows plan participants to:

- "Find urgent care, pharmacies and doctor's offices near you"
- "[C]heck in for appointments and **pick up prescriptions**"
- "Email your doctor's office with nonurgent follow-up questions or medical advice"
- "Call Member Services with questions about your plan, benefits, billing and account"
- "See a list of your medications, **fill most prescriptions**, and check the status of recent prescription orders"
- "View your **medical history**, including immunizations, lab results, and a **personalized health action plan**"

Kaiser Permanente website, https://healthy.kaiserpermanente.org/pages/mobile-app (accessed September 3, 2024) (emphases added). The structure of the integrated website and app in Kaiser's case makes the patient information disclosures facilitated by Meta pixel and SDK far more extensive than the limited interactions that occurred in the so-called hospital litigation cases. As denoted above, the Kaiser disclosures bear much more in common with the disclosures involved in telemed providers *Hey Favor* (which involved patients interacting with medical providers to obtain birth control via mail order) and *GoodRx* (a site/app involving prescription coupons also retailing telehealth medical provider interaction and mail order prescriptions).

As stated by Hon. Judge William H. Orrick in his first order denying a motion to sever in *Hey Favor*,

> I recognize that the Consolidated Class Action complaint filed by Interim Class Counsel in the *Meta Pixel Healthcare Litigation* case contains allegations that may be broader and could overlap with some aspects of the claims asserted against Meta in this case. However, **the appropriate scope of the *Meta Pixel Healthcare Litigation* has yet to be tested or finally determined**. More significantly, there are scores of cases being filed around the country challenging the collection of personal information through Pixel, SDK, and related technologies against a host of different defendants. **At this juncture, I do not believe that folding the app-based SDK claims into the *Meta Pixel Healthcare Litigation* case is necessary (or even desirable) for purposes of judicial efficiency, including those claims that concern Meta and the collection of "healthcare" information.**

(*Doe v. Hey Favor, Inc.,* No. 23-cv-00059-WHO (ECF 75 p.2) (emphases added).

Similarly, in this case, the consolidated Meta pixel class action may overlap with some aspects of the claims asserted against Meta in this case, but in this case involving both pixel and SDK claims and multiple defendants and a much more extensive data collection via Kaiser's website and app than a simple hospital portal, it would be inappropriate to sever defendant Meta at this time.

### C. The Claims Against Meta Arise from the Same Transaction or Occurrence as Plaintiffs' Claims Against the Other Defendants in This Case

Meta lists the elements of a Rule 21 analysis but never actually argues that Plaintiffs' claims against Meta do not arise from the same transaction or occurrence as those against the other defendants in this case, for the simple reason that they obviously do and this would support denial of their motion.

Claims arise from the same transaction or occurrence when there is "similarity in the factual background of [the] claim[s]." *Coughlin*, 130 F.3d at 1350. This "simply requires 'related activities' and 'similarity in the factual background of a claim.'" *Jacques v. Hyatt Corp.*, No. C 11-05364 WHA, 2012 WL 3010969, at *3 (N.D. Cal. July 23, 2012) (citing *Bravado Int'l Grp. Merch. Servs. v. Cha,* No. CV 09-9066 PSG (CWX), 2010 WL 2650432, at *4 (C.D. Cal. June 30, 2010)). Here, Plaintiffs' claims against Meta arise out of the same "transactions and occurrences"

as their claims against Kaiser and Google: Plaintiffs' use of the Kaiser website or app, and the incorporation into Kaiser's platforms of Meta and Google technology that allowed the interception of Plaintiffs' data and communications. (ECF 1-4 (FAC), ¶¶ 6, 12-14, 22, 23, 25, 26, 32.) Plaintiffs allege Kaiser "created, maintained, preserved, and stored" Plaintiffs' and the Class members' personal and confidential medical information, which was then "released to unauthorized persons" and/or "intercepted" by them, without Plaintiffs' and the Class members' authorization. (ECF 1-4 (FAC) at ¶¶ 4-6). Meta is one of the "unauthorized persons" to whom Kaiser intentionally or negligently released Plaintiffs' data. (ECF 1-4 (FAC) at ¶ 6, *see also id.* at ¶¶ 176-179.)

Defendants Meta and Google intercepted Plaintiffs' personal and private information simultaneously as Plaintiffs interacted with the Kaiser website or app using the type tools listed above that Kaiser included in its website and app code. (ECF 1-4 (FAC) at ¶¶ 4-6). Notably, Plaintiffs have not alleged multiple, separate transactions or occurrences where information was relayed *only* to Meta that could be severed. This is because the code for <u>both</u> Meta and Google was embedded in Kaiser's platforms when Plaintiffs were using the website or app. *See Opperman v. Path, Inc.*, 2013 WL 1899688, at *4, *6 (N.D. Cal. May 6, 2013) (court refused to sever claims against app developers when they "assisted, collaborated, and conspired" with Apple in the same "transaction or occurrence"); *Horowitz v. Chen*, 2020 WL 4805466, at *2 (C.D. Cal. May 20, 2020) (declining to sever claims that "arise from the exact same set of facts" because it would make "little practical sense"). There is no way to separate Plaintiffs' usage of the Kaiser website or app from the simultaneous transmission of their personal information to both Defendants.

Defendant Meta is, like Google, an "unauthorized person" that accessed Plaintiffs' confidential and private information through Kaiser's platform. While Google and Meta may have used different technology to obtain Plaintiffs' private data, there is overlap in the "transactions and occurrences" underlying Plaintiffs' claims against all three corporate Defendants.

### D. Plaintiffs and Plaintiffs' Claims Against Meta in This Case Are Different from Those in the Meta Consolidated Healthcare Action.

Moreover, the claims in this case are not the same as the claims made in the Consolidated Healthcare Action—not the same allegations, and not the same parties. Hon. Judge Orrick in *Hey Favor*, *supra*, specifically references the currently-expansive scope of the Consolidated Healthcare Action as a reason to deny the motion to sever in the case before him. Indeed, the opposition to Meta's Motion to Sever in *GoodRx* describes the *Meta Healthcare* complaint as having a "fantastical class definition—which purportedly encompasses every Facebook user whose undefined health data was ever 'obtained by Meta' (regardless of means) from any 'health care provider or covered entity' (which is defined as "any person or business entity for which Plaintiffs and Class members have a reasonable expectation of privacy that the 'covered entity' will not share patient health information with third parties" MPCAC ¶ 20)." (Case 3:23-cv-00501-AMO, ECF 188 p.7).

And yet, for all its over-broadness, the Consolidated Healthcare Action's fantastical class definition is limited by the terms of the case to Facebook users—a class of persons that will not include all members of the class defined in the instant action. Definitionally, severing and referring the Meta claims in this case would serve to procedurally extinguish substantive rights of class members in this action. This cannot be allowed. *Martin v. Pierce Cnty*., 34 F.4th 1125, 1128 (9th Cir. 2022) (rejecting application of a procedural rule that would change the "substantive right[s]" provided in federal court).

Moreover, the legal claims asserted in this action are in many cases different than the legal claims asserted in the Consolidated Healthcare case. As noted above, Plaintiffs' operative complaint asserts causes of action for violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code, §§ 56, *et seq*., California's Unfair Competition Law, Cal. Bus. &

Prof. Code §§ 17200, *et seq*.; negligence; negligence per se; Common Law Invasion of Privacy – Intrusion Upon Seclusion; Cal. Penal Code § 631 and Cal. Penal Code § 631. (ECF 1-4 (FAC), *passim*). Meta's motion to sever acknowledges and lists the non-overlapping claims of breach of contract; breach of duty of good faith and fair dealing; violation of the federal Wiretap Act., violation of the California Invasion of Privacy Act; intrusion upon seclusion; invasion of privacy; trespass; violation of the California Comprehensive Data Access and Fraud Act; and unjust enrichment. (ECF 36 pp.4-5). Indeed, Meta concedes that Plaintiffs have made claims that are "not asserted in the Consolidated Healthcare action". (ECF 36 at fn.3). Once again, it would be wholly inappropriate to procedurally deprive the Plaintiffs in the instant case of their substantive rights to the legal claims made against Meta herein.

### E. Severance Would Neither Promote Judicial Economy Nor Avoid Prejudice to Meta.

The first point raised by Meta in its motion in favor of severance is that it would promote judicial economy and avoid prejudice to Meta. Meta devotes most of this argument section to the issue of judicial economy and gives scant support for the averment of prejudice.

Because Plaintiffs' claims against Meta and the other Defendants present common questions that will be proved by the same evidence, severing Plaintiffs' claims against Meta will not serve judicial economy. *See SEC v. Leslie*, 2010 WL 2991038, at *4 (denying motion to sever claims where "[b]ecause of the significant number of common witnesses and documents, severance would not result in judicial economy[.]"); *see also Grano v. Sodexo Mgmt., Inc.,* No. 318CV01818GPCBLM, 2020 WL 2111898, at *8 (S.D. Cal. May 4, 2020) (finding severance would not serve judicial economy where "there will be significant overlap of key witnesses and documentary evidence").

The situation here is the same as that where Hon. Judge Orrick held in the *Hey Favor* case: "the Consolidated Class Action complaint filed by Interim Class Counsel in the *Meta Pixel Healthcare Litigation* case contains allegations that may be broader and could overlap with some aspects of the claims asserted against Meta in this case…[nevertheless, a]t this juncture, I do not believe that folding the app-based SDK claims into the *Meta Pixel Healthcare Litigation* case is necessary (or even desirable) for purposes of judicial efficiency, including those claims that concern Meta and the collection of "healthcare" information." (*Doe v. Hey Favor, Inc.,* No. 23-cv-00059-WHO (ECF 75 p.2). It is also the same as in the *Frasco v. Flo Health* case (Case No. 3:21-cv-00757-JD (N.D. Cal.)), which was filed before the Consolidated Healthcare cases and has proceeded along further than the other cases against Meta in the Northern District—notably, with both Meta/Facebook and Google counted as defendants, and without any specter of lack of judicial economy raised. Indeed, most consistent with the spirit of judicial economy, a joint "Analytics Defendants" motion to dismiss has been filed in that case with both Meta/Facebook and Google as co-signors. (Case No. 3:21-cv-00757-JD (N.D. Cal.), ECF 86).

Indeed, as demonstrated in the *Frasco* case, judicial economy would be best served by keeping the claims together at this time. Plaintiffs' claims against Meta and those against Kaiser "share a high degree of similarity and numerous common questions of law and fact[,]" meaning that "[k]eeping the claims together will streamline the proceedings, reduce litigation costs for all Parties, and eliminate the need for duplicative discovery and motions." *E.C. v. Lincoln Mil. Prop. Mgmt. LP*, No. 21-CV-2070 JLS (BLM), 2022 WL 4241734, at *7 (S.D. Cal. Sept. 13, 2022). Severing Plaintiffs' claims against Meta "will produce the opposite and result in inefficiency, overlap of witnesses, issues of fact and law and defenses and will produce a significant amount of extra work." *Schertzer v. Bank of America, N.A.* (S.D. Cal., Apr. 13, 2021, No. 19CV264 JM(MSB)) 2021 WL 1383164, at *3 (S.D. Cal. Apr. 13, 2021).

Meta argues severance promotes judicial economy because, if the Court grants severance, Meta will promptly seek relation of the severed claims to the consolidated Meta case—but even the Judge handling the consolidated cases has opined that in cases such as this, severing would not promote judicial economy. The nexus between Plaintiffs' claims against Meta and against Kaiser in this action is closer than the connection between Plaintiffs' claims against Meta in this action and those Meta is defending against in the Consolidated Healthcare Action. Severing Plaintiffs' claims against Meta into a separate action so that it can be related to the Consolidated Healthcare Action is not more efficient than trying Plaintiffs' claims against both Kaiser and Meta arising out of the same factual background in the same action. Indeed, forcing Plaintiffs to acquire Meta discovery as a third party in this case would be inefficient and would risk inconsistent discovery orders between this case and the Consolidated Healthcare case.

Moreover, as pointed out in Plaintiffs' opposition to Google's similar motion to sever, severing the claims of Kaiser and Meta would only serve to create additional discovery. Plaintiffs have raised claims under the California Confidentiality of Medical Information Act, Cal. Civil Code §56, *et seq*., that Kaiser released or disclosed without authorization. One of the key components of that cause of action is whether or not medical information was released or disclosed by Kaiser to Meta. "Medical Information" is a defined term under the CMIA, requiring both personally identifiable information (name, social security number, etc.) and "patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment". Cal. Civil Code §56.06(j). And so, in proportion to the needs of the case, Plaintiffs will necessarily seek discovery as to what information was released and/or disclosed to Meta from Kaiser, and what information was received by Meta. If Plaintiffs' claims against Meta are severed, Plaintiffs would have to seek the

same information from both Kaiser and Meta twice – once by written discovery, and once by subpoena – necessarily creating duplicative discovery.

Similarly, since many of the witnesses to the events that led to this wholesale disclosure of medical information and subsequent sale to advertisers are going to be the same, severing Meta's claims from this Kaiser action would necessarily require the same witnesses to be deposed twice in what would then be two separate actions in front of two different judges. And further potentially lead to inconsistent rulings between the Honorable Judge Orrick and the Court.

Insofar as Meta's prejudice argument goes, Courts have held that there could be a danger of prejudice resulting from jury confusion, *see Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296-1297 (9th Cir. 2000) (holding "danger of jury confusion" supports severance of otherwise properly joined claims). Meta alleges that hearing "evidence regarding each of these distinct technologies alongside one another may…risk confusion and prejudice to Meta" (ECF 36 at 6-7), but Meta provides no explanation or factual support for this nakedly conclusory statement. This is the same type of general, speculative conclusion unburdened by explanation or factual support that was rejected as a basis for severance in *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 2013 WL 2631333, at *6 (S.D. Cal. June 11, 2013) (addressing an argument that the jury would be confused by similar copyright allegations against multiple defendants), and should not be the basis for severance in this case.

Finally, Meta argues in this section of its brief for severance because trying Plaintiffs' claims against it in this action will present "the risk of inconsistent results that may spring from having to litigate the same issues in multiple cases." (ECF 36 at 5-6). In point of fact, severing Plaintiffs' claims against Meta into a separate action from Plaintiffs' claims against Kaiser and Google would force *Plaintiffs* to litigate claims arising out of the same events in two separate actions. Accordingly, Meta's argument that severance will avoid prejudice is not persuasive.

### F. The Claims Against Meta Present Questions of Law and Fact Common to Plaintiffs' Other Claims and Will be Proven by Common Evidence.

Meta next argues that there are distinct factual questions requiring different witnesses and proof due to the multiple defendants in this case. The mere existence of different witnesses speaking on behalf of different parties does not support severance—the question is whether there are common questions of law or fact. This issue of whether there are common questions of law or fact is "not a particularly stringent test[.]" *Rosewolf v. Merck & Co.*, No. 22-CV-02072-JSW, 2022 WL 3214439, at *2 (N.D. Cal. Aug. 9, 2022) (citing *Walker v. Bryson*, No. 1:11-CV-01195-AWI, 2012 WL 5186658, at *4 (E.D. Cal. Oct. 16, 2012).

As discussed above, the facts of this case are clearly about a common transaction or occurrence presenting common questions of law and fact. Meta's argument against a common transaction or occurrence existing is disingenuous at best; without question, the Plaintiffs did not separately disclose the same health information to both Meta and Google. A *single instance* of communication with Kaiser, presumed by Plaintiffs to be subject to privacy protections, *simultaneously* via Meta- and Google-solicited coding broadcast Plaintiffs' personal information to *both* Meta and Google, and thereafter was sold to innumerable and potentially overlapping data-seeking customers of Meta and Google. With the aid and cooperation of data source Kaiser, Meta and Google both created markets for this ill-gotten data and distributed Plaintiffs' private information accordingly. Nowhere do Plaintiffs claim that Meta received protected health data in any sort of sever-able event of discrete disclosure to Defendant Meta. It was all a single occurrence, a common fact, subject to common issues of law.

Plaintiffs' claims against all three Defendants involve common questions of fact. Incorporation of Meta's pixel and SDK technology onto Kaiser's website and app and use of such technology to obtain Plaintiffs' confidential and private information are key factual questions underlying Plaintiffs' claims against both Kaiser and Meta. "Each of the defendants, moreover,

will surely be pointing to the other as the primary cause of the ultimate injuries[,]" which further creates common questions of fact. *Jacques v. Hyatt Corp*., 2012 WL 3010969, at *4. Since Plaintiffs claim that both Meta and Google accessed their private information via Kaiser's platforms, Plaintiffs' claims against Meta also raise factual questions that will be common to their claims against Google. Severing claims would only serve to result in duplication of effort in discovery and litigation.

There will be substantial overlap in the evidence relevant to proving Plaintiffs' claims against all three Defendants. In its separate motion to sever, Google conceded that "the claims against Google and Kaiser may entail evidentiary overlap to the extent that Kaiser's alleged actions involve the deployment of Google's technology," (ECF 24 at p. 6). The same is true here as to Meta and Kaiser.

Incorporation of Meta's and Google's technology into Kaiser platforms is at the core of Plaintiffs' claims against Meta, Google, and Kaiser, and the same evidence will be relevant to litigating Plaintiffs' claims against all Defendants. Given the nature of Plaintiffs' claims, Meta witnesses and documentary records will be relevant to Plaintiffs' claims against Kaiser and Kaiser witnesses and documents will be relevant to Plaintiffs' claims against Meta. Expert testimony on issues relating to Meta's technology and its incorporation onto Kaiser's website and expert testimony on issues relating to damages is also likely to overlap. This factor weighs against severance. *Cf. Zaldana v. KB Home*, No. C-08-3399 MMC, 2010 WL 4313777, at *2 (N.D. Cal. Oct. 26, 2010) (denying severance, noting "defendants offer no evidence, for example, that if severance were granted, [certain witnesses] would not be necessary witnesses in both trials."); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg*., No. 10-CV-419-GPC WVG, 2013 WL 2631333, at *6 (S.D. Cal. June 11, 2013) (declining to sever claims and finding "there is no

indication that these common witnesses, percipient and expert, would not have to testify twice" if claims were severed).

Moreover, Plaintiffs' claims against all three Defendants present significant common legal questions, including but not limited to whether the type of information Defendants obtained and sold to third party advertisers constitutes confidential medical information as defined by Civil Code § 56.05(j) and whether selling data gathered from Plaintiffs and the class via Kaiser's platforms violated the FTC Act, HIPAA, CMIA, and/or other law.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Meta's motion to sever.

Dated: September 6, 2024

POTTER HANDY, LLP

*/S/ James M. Treglio*

JAMES M. TREGLIO,
Attorneys for Plaintiffs