**GIBSON, DUNN & CRUTCHER LLP**
ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

**COOLEY LLP**
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CHRISTOPHER NEWTON, CHRISTA VITAL, and SCOTT SCHUTZA, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation; META PLATFORMS INC., a Delaware Corporation; GOOGLE LLC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive,

Defendants.

Case No. 3:24-cv-03625-EMC

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER CLAIMS AGAINST DEFENDANT META PLATFORMS, INC.**

Action Filed: April 29, 2024

Honorable Edward M. Chen

Date: October 30, 2024
Time: 9:30 a.m.
Courtroom: 5 – 17th Floor

## INTRODUCTION

The allegations against Meta in this case are duplicative of—and encompassed within—those asserted in the Consolidated Healthcare Action. Plaintiffs in both this case and the Consolidated Healthcare Action allege that Kaiser sent Meta their health information through Meta's tracking tools, like the Meta Pixel and SDK. In their attempt to defeat severance, plaintiffs significantly understate the judicial-economy gains severance and consolidation will yield and the unfair prejudice to Meta and risk of inconsistency it will avoid. They also significantly overstate any purported benefits of denying severance. As many other courts have done, this Court should grant Meta's motion to sever to clear the path for consolidation and allow for the expeditious resolution of this case.

## ARGUMENT

In numerous other cases where both Meta and a healthcare provider were named as a defendant, courts have severed the claims against Meta so that they could be consolidated with the Consolidated Healthcare Action proceeding before Judge Orrick. *See*, *e.g.*, *Harrill v. Emanuel Med. Ctr.*, 23-cv-1672-TLN-CKD, ECF No. 23 (E.D. Cal. Oct. 12, 2023); *Rose v. Sansum Clinic*, No. 23-cv-08180, ECF No. 25 (C.D. Cal. Oct. 20, 2023); *Beltran v. Doctors Med. Ctr. of Modesto*, No. 23-cv-01670-TLN-CKD, ECF No. 25 (E.D. Cal. Oct. 12, 2024); *Williams v. Banner Health*, No. 23-cv-01228-JFM, ECF No. 34 (D. Ariz.). The same path is appropriate here: The allegations against Meta in this case should be severed because they are subsumed by the allegations in the Consolidated Healthcare Action—indeed, Kaiser is expressly named as a covered entity in the Consolidated Healthcare Action. Severance and consolidation, which is supported by counsel for the Consolidated Healthcare Action plaintiffs, will best advance judicial economy and avoid unfair prejudice. Plaintiffs' arguments do not show otherwise.

### A. Plaintiffs' Allegations Against Meta Duplicate The Allegations In The Consolidated Healthcare Action.

Plaintiffs argue that their claims "are not the same as the claims made in the Consolidated Healthcare Action." Opp. 10 (emphasis omitted). But the allegations against Meta here parallel those in the Consolidated Healthcare Action: Both cases allege the same conduct involving the same technologies against the same defendant. Mot. 1–4. Indeed, Kaiser is expressly named as a "covered

entity" in the Consolidated Healthcare Action—a fact plaintiffs ignore entirely. This reality dispels plaintiffs' attempts to compare this case to others in which severance has been denied and to invent distinctions between this case and the Consolidated Healthcare Action.

*First*, plaintiffs seek to invent distinctions between the allegations against Meta in this case and those in the Consolidated Healthcare Action. Their efforts fall flat. This case and the Consolidated Healthcare Action involve parallel allegations that Meta received sensitive health information as a result of Kaiser's installation of Meta's tracking tools, including the Meta Pixel and SDK. *Compare* Compl. ¶ 6, *with In re Meta Pixel Healthcare Litigation*, No. 3:22-cv-3580-WHO (N.D. Cal. Oct. 10, 2023), ECF No. 335 ("Healthcare CAC") ¶¶ 1, 33 ("Jane Doe VI used the Kaiser web-properties while Meta Collection Tools were present on the properties."), 34 (same for different plaintiff), 36 ("She used the Kaiser patient portal more than two dozen times while Meta Collection Tools were present on the portal login page."). Any health information transmitted from Kaiser to Meta using Meta's tracking tools is therefore already the subject of the Consolidated Healthcare Action.

Plaintiffs' contention that the proposed classes are dissimilar, Opp. 7, does not hold water—and even if true would not justify denying severance. The Consolidated Healthcare Action plaintiffs seek to represent a nationwide class of "Facebook users whose health information was obtained by Meta from their health care provider or covered entity's website or application," expressly naming "Kaiser." Healthcare CAC ¶¶ 33, 34, 36, 114–117, 120–121, 132, 353. Plaintiffs argue that their proposed class definition includes individuals who do not use Facebook. Opp. 10. But all three plaintiffs are Facebook users, and thus fall squarely within the putative class in the Consolidated Healthcare Action. Healthcare CAC ¶ 353. Plaintiffs' untested proposed class definition does not supply any justification to oppose severance, particularly when plaintiffs themselves are members of the putative class in the Consolidated Healthcare Action.

Moreover, even where "the class definitions and claims somewhat differ" between two cases, the presence of "numerous common legal questions presented warrant[s] consolidation." *Amador v. Logistics Express, Inc.*, 2010 WL 3489038, at *1 (C.D. Cal. Aug. 27, 2010) (quotation marks omitted). After all, "issues which will be presented in any motions for class certification . . . will be substantially duplicative," *id.*, and "discovery will likely overlap to a large degree," *Lopez v. Liberty Mut. Ins. Co.*,

2014 WL 12853283, at *5–6 (C.D. Cal. Oct. 24, 2014) (consolidating cases for purposes of pre-certification discovery despite "concern regarding the scope of the putative classes in each case"). Accordingly, where (as here) the allegations and claims overlap, courts have granted consolidation notwithstanding "slightly different claims, parties, and classes." *Diaz v. Univ. of S. Cal.*, 2020 WL 5044419, at *3 (C.D. Cal. July 17, 2020) (consolidating cases despite varying class definitions); *Garcia v. Gordon Trucking, Inc.*, 2011 WL 2746305, at *7 (E.D. Cal. July 14, 2011) (same); *Sayce v. Forescout Techs.*, 2020 WL 4207444, at *4 (N.D. Cal. July 22, 2020) (same, where allegations slightly varied).

*Second,* plaintiffs argue that "the legal claims asserted in this action are in many cases different than the legal claims asserted in the Consolidated Healthcare case." Opp 10. Plaintiffs overstate the differences: Of the five claims they assert against Meta, three are asserted in the operative complaint in the Consolidated Healthcare Action (intrusion upon seclusion, Cal. Penal Code § 631, and Cal. Penal Code § 632), and a fourth was previously asserted in the Consolidated Healthcare Action but then dismissed (UCL). *Compare* Compl. ¶¶ 154–168, 193–230 *with* Healthcare CAC ¶¶ 445–474 *and* Consolidated Healthcare Action, ECF No. 316 at 25. Moreover, as other courts have explained, "consolidation is appropriate even where two cases turn on separate legal claims" or "the causes of actions in the two cases are undoubtedly distinct." *Liberty Mut. Ins. Grp. v. Panelized Structures, Inc.*, 2012 WL 13048972, at *3 (D. Nev. June 22, 2012); *accord, e.g.*, *Amador*, 2010 WL 3489038, at *1; *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). Where, as here, the allegations against Meta "overlap almost completely" between the two cases, plaintiffs' assertion of one additional claim is no obstacle to severance or consolidation. *Ali v. Intel Corp.*, 2018 WL 2412111, at *2 (N.D. Cal. May 29, 2018); *see also, e.g.*, *Diaz*, 2020 WL 5044419, at *2 (granting consolidation where two cases included distinct claims); *Crowl v. Cupertino Elec., Inc.*, 2023 WL 8461175, at *1 (N.D. Cal. Dec. 6, 2023) (same); *Garcia*, 2011 WL 2746305, at *6 (same); *Amador*, 2010 WL 3489038, at *1 (same). As with class definitions, the claims need not be "completely identical"; consolidation is warranted so long as "the claims arise from the same single incident and there is sufficient commonality among [them]." *Russell v. Werner Enters. Inc.*, 2016 WL 3912910, at *4 (D. Ariz. July 20, 2016). That is the case here.

*Third*, plaintiffs analogize their claims to the ones in *Hey Favor* and *GoodRx*, where severance was denied. *See Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, ECF No. 207 (N.D. Cal. July

31, 2024); *Doe v. Hey Favor, Inc.*, No. 23-cv-00059-WHO, ECF No. 117 (N.D. Cal. Jan. 17, 2024). But both cases are readily distinguishable.

*Hey Favor* presented unique circumstances that are inapplicable in this case: The Healthcare CAC expressly excludes information allegedly transmitted by Hey Favor (an online telehealth company) from the proposed class. Healthcare CAC ¶ 357 ("Also excluded from the Class is health information that was obtained by Meta from Hey Favor, Inc."). Similarly, *GoodRx* concerns an online prescription coupon company rather than a hospital. *GoodRx*, No. 23-cv-00501-AMO, ECF No. 102, ¶ 1. In declining to consolidate the claims against Meta in *Hey Favor*, Judge Orrick emphasized that he "ha[s] been trying to keep the hospital litigation cases separate from everything else," and that "the telemed cases are different to some degree even though they overlap." *Hey Favor*, No. 23-cv-00059-WHO, ECF No. 78 (June 15, 2023 Hr'g Tr.) at 6:6–17). Judge Martínez-Olguín repeated that distinction in declining to sever the claims against Meta in *GoodRx*. *See Doe v. GoodRx Holdings, Inc.*, No. 3:23-cv-00501-AMO, ECF No. 207 at 2 (N.D. Cal. July 31, 2024). But here, far from being excluded from the Consolidated Healthcare Action, Kaiser is explicitly named in that litigation—it is referenced dozens of times in the Healthcare CAC. *See, e.g.*, Healthcare CAC ¶¶ 33, 34, 36, 114, 115, 116, 117, 120, 121. Unsurprisingly, the plaintiffs in the Consolidated Healthcare Action have already agreed that these cases should be consolidated because of the substantial overlap. *See* McCloskey Decl. ¶ 2. There is thus little reason to keep them separate.

**B. Severance And Consolidation Will Promote Judicial Economy and Avoid Unfair Prejudice to Meta.**

Severance and consolidation of the claims against Meta here would allow the parties to take advantage of the substantial work already done in the Consolidated Healthcare Action. It would also avoid potential jury confusion stemming from presenting one jury with evidence regarding both Meta's and Google's advertising tools. Plaintiffs contend that severance will not serve judicial economy and that litigating all their claims against different companies in this case presents no risk of jury confusion or inconsistent outcomes. They are wrong on both counts.

***Judicial Economy.*** Plaintiffs primarily argue that combining their claims with those in the Consolidated Healthcare Action "would not promote efficiency" because "significant discovery

activity has occurred" in that case and "Meta has answered the operative complaint." Opp. 6. But the progress already made in that consolidated action is exactly *why* severance and consolidation would promote judicial economy and efficiency here: There is no reason to duplicate the work already done. Severance and consolidation would reduce the burden associated with simultaneous, largely duplicative discovery that litigating this case separately from the Consolidated Healthcare Action would invite.

In contrast, conducting discovery related to plaintiffs' claims against Meta in this case would be duplicative of the discovery work already done in the Consolidated Healthcare Action. In addition to the unnecessary burden and expense of requiring Meta to engage in duplicative discovery negotiations and make duplicative productions, requiring the claims against Meta in this case to proceed separately from the Consolidated Healthcare Action would unnecessarily require the courts to hear, and Meta to litigate, the same discovery disputes multiple times, unduly burdening the judicial system and Meta and increasing the risk of inconsistent rulings. *See Trazo v. Nestle USA, Inc.*, 2013 WL 12214042, at *3 (N.D. Cal. Dec. 4, 2013) ("Severing Plaintiffs' case . . . will help streamline discovery and allow the parties to focus on the distinct evidence required to support each separate claim.").

Plaintiffs also argue that severing their claims against Meta here will not promote efficiency because (they say) their "claims against Meta and the other Defendants present common questions that will be proved by the same evidence." Opp. 11. But that speculative assertion is belied by plaintiffs' own allegations. Plaintiffs claim that Kaiser incorporated pixel and SDK tracking technology from both Meta and Google on the Kaiser platform. ECF No. 1-4 ("Compl.") ¶¶ 6, 102, 113. With multiple defendants—and thus multiple business tools and different technology—plaintiffs will likely seek to introduce evidence about both Meta's and Google's systems. That is not "the same evidence." *Id.* If and to the extent plaintiffs might need some discovery from Meta in order to pursue their claims against Kaiser, appropriately tailored third-party discovery supplies a ready solution.

Plaintiffs rejoin that severance would require them to "seek the same information from both Kaiser and Meta twice" regarding "what information was released and/or disclosed to Meta from Kaiser, and what information was received by Meta." Opp. 13–14. But that is irrelevant to severance because any need plaintiffs have to seek separate discovery from Meta and Kaiser exists whether or

not Meta remains a defendant in this action. Moreover, the greater burden is on Meta as the party *responding* to discovery requests, not on plaintiffs as the party propounding them. And with respect to any discovery unique to plaintiffs' claims against Meta, as explained above, severance and consolidation will further minimize the burden on the parties by allowing plaintiffs to take advantage of the substantial discovery already completed in the Consolidated Healthcare Action.

The benefits of severance and consolidation are only heightened here by the Court's recent decision to consolidate the three pending cases against Kaiser, *see* ECF No. 43, and plaintiffs' concession that their claims against Kaiser will likely be compelled to arbitration, *see* Aug. 27, 2024 Hr'g Tr. 6:20–25. Further, interim lead plaintiffs' counsel for the consolidated case has already stated that they "would choose not to assert claims against Meta" and believe the claims against Meta should "take their own separate path." Aug. 27, 2024 Hr'g Tr. 14:13–24, 17:20–18:6. They are already on that path in the Consolidated Healthcare Action. Severance and consolidation allows plaintiffs' claims against Meta to move forward in the consolidated case, and will leave no claims against Meta in this case.

***Prejudice.*** Severance and consolidation will also avoid prejudice to Meta, including the risk of inconsistent results that may spring from having to litigate the same issues in multiple cases. *See Netlist, Inc. v. Smart Modular, Inc.*, 2013 WL 12128691, at *7 (C.D. Cal. Nov. 26, 2013); *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, 2022 WL 18110171, at *5 (S.D. Cal. Nov. 22, 2022). Plaintiffs concede that "a danger of prejudice resulting from jury confusion . . . supports severance of otherwise properly joined claims." Opp. 14 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296–97 (9th Cir. 2000)). And that danger is real here because, as noted above, with multiple defendants in this case, the jury will hear evidence related to two entirely separate sets of advertising tools and systems used by Kaiser (Meta's and Google's). Given the technical nature of these tools and systems, the jury may be confused by how each system operates and any differences in liability based on each system's operations.

Plaintiffs argue that they will suffer prejudice if they are forced "to litigate claims arising out of the same events in two separate actions." Opp. 14. Plaintiffs' premise is false: as described in the next section, the claims do not arise from the same events. And in any case, plaintiffs never specify

what that prejudice would be. If plaintiffs are referring to the danger of inconsistent results, Meta would face that risk to a much greater degree if severance is denied: If Meta's motion is granted, plaintiffs face only the commonplace risk of prevailing against one defendant but not another, whereas if Meta's motion is denied, it risks being found liable in one case for receiving data from Kaiser even if it prevails in another.

### C. The Claims Against Meta and the Claims Against the Other Defendants in This Case Present Distinct Factual Questions Arising from Separate Transactions or Occurrences and Requiring Different Witnesses and Documentary Proof.

Plaintiffs insist there are common questions of law or fact here that will be proven by common evidence and likewise assert that the claims in this case arise out of the same "transaction and occurrence" as the claims against Kaiser and Google. Not so. As Meta showed, the factual allegations surrounding Meta's Pixel and SDK are wholly distinct from the allegations pertaining to Google's technology, and plaintiffs do not allege any collaboration between Google and Meta or any interaction among their separate technologies. Mot. 6–7.

Plaintiffs note that "the code for both Meta and Google was embedded in Kaiser's platforms." Opp. 8–9. But the mere presence of defendants' respective codes on Kaiser's platforms at the same time does not transform plaintiffs' distinct allegations into a single transaction. Google and Meta are each alleged to have intercepted plaintiffs' information via their respective, separate tools; specifically, plaintiffs allege that Kaiser sent data to Meta through the Meta Pixel, Compl. ¶ 87, and Meta's "software development kit (SDK)," *id.* ¶ 94; they separately allege that Kaiser sent data to Google through Google's own "code" for third-party websites, *id.* ¶ 108. The factual allegations surrounding each of these tools are distinct. *Id.* ¶¶ 80–104 (discussing Meta's SDK and Pixel technologies); *id.* ¶¶ 105–115 (discussing Google's technology).

Plaintiffs also do not allege that Google and Meta collaborated with one another in the process of receiving plaintiffs' data. Nor do they claim that these technologies interact with one another. As a result, as in *Colors of India v. Nielsen*, 2018 WL 6430118, at *5 (C.D. Cal. Oct. 19, 2018), each defendant here "will undoubtedly make different arguments in support of their claims, submit different evidence, and call different witnesses to testify." *Id.*; *cf. E.C. v. Lincoln Mil. Prop. Mgmt. LP*, 2022

WL 4241734, at *7 (S.D. Cal. Sept. 13, 2022) (denying motion to sever and concluding that consolidated trial was appropriate because underlying allegations were "all issues that presumably can be testified to and documented by the same witnesses and evidence").

For the same reasons, contrary to plaintiffs' speculative and unsupported argument, Kaiser's transmissions of information to Meta and Google cannot be treated as "a single instance of communication." Opp. 15; *see also Opperman v. Path, Inc.*, 2013 WL 1899688, at *5 (N.D. Cal. May 6, 2013) (explaining that "absent an allegation that any of the downloading defendants downloaded from one another, there cannot be a common transaction or occurrence"). Rather, any data sent to Meta through its technology and any data sent to Google through its technology would raise different factual and technical questions (even if, as plaintiffs allege, that transmission occurred "simultaneously.") Opp. 15. This will necessarily include separate evidence and separate witnesses with knowledge of each of these different technologies. And, to the extent that there may be common evidence as to Kaiser's use of Meta's Pixel and SDK specifically, that does not outweigh the risk of prejudice or the efficiency gains described above.

## CONCLUSION

Meta respectfully requests that this Court sever the claims against Meta in this action so that the claims may be related to and consolidated with the Consolidated Healthcare Action.

Dated: September 13, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: *<u>/s/ Elizabeth K. McCloskey</u>*
Elizabeth K. McCloskey

**COOLEY LLP**

By: *<u>/s/ Michael G. Rhodes</u>*
Michael G. Rhodes

*Attorneys for Meta Platforms, Inc.*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Elizabeth K. McCloskey, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: September 13, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Elizabeth K. McCloskey*
Elizabeth K. McCloskey